IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-CR-531 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| LADELLE COX, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Ladelle Cox ("Cox") was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Before the Court is defendant's motion to suppress statements as well as evidence obtained as a result of a traffic stop [47]. For the following reasons, the Court grants in part and denies in part the motion to suppress statements and denies the motion to suppress evidence.

**Background**

On July 7, 2022, the Court held an evidentiary hearing on Cox's motion to suppress. Chicago Police Department Officer Kearns testified. The government also introduced video footage from the squad car dashboard camera and body cameras worn by Officer Kearns and Chicago Police Department Officer Ramirez.

On June 6, 2020, Officers Kearns and Ramirez completed a traffic stop of a white Camaro. The dashboard camera video of the officers' patrol car shows the Camaro take a right-hand turn off of 69th Street in Chicago, Illinois to turn south onto Halsted Street. Officer Kearns testified that Cox drove into the bike lane while making the turn. Officer Ramirez then executed a three-point turn to follow the Camaro. Officer Kearns testified and the dash cam video showed that the Camaro continued south on Halsted and then drove into the bike lane without signaling in order to

pass a left-turning car. Thereafter, Officer Kearns testified and the video showed that Officer Ramirez activated the squad car lights and pulled the Camaro over. After speaking with the officers and a sergeant, Cox reached into the car's glove compartment to retrieve a bag of cannabis, which he handed to an officer. The officers detained Cox and his passenger and searched the car, in which they found a pistol.

The Officers placed Cox in the back of a patrol car and drove him to the police station without reading him his *Miranda* rights. During the drive, Cox and Officers Kearns and Ramirez had the following conversation:

| | |
|---|---|
| Cox: | Hey officer. |
| Officer Ramirez: | Yeah? |
| Cox: | Hey thanks for not impounding my car, brother. |
| Officer Ramirez: | Yeah, no, you're good, man. Alright? |
| Officer Kearns: | You know what impound fees are for-for a gun? |
| Cox: | Huh? |
| Officer Kearns: | You know what impound fees are for a gun? |
| Cox: | I can't hear you. |
| Officer Kearns: | You know how much it is to get your car out for a gun? |
| Cox: | Yeah. A lot. |
| Officer Kearns: | $2,000. |
| Cox: | I know. [Long pause]. Hey I-I-I- I keep a- I keep a gun for protection 'cause you know people out here are crazy. |

Thereafter, while at the police station and after officers read Cox his *Miranda* rights, the following conversation occurred:

| | |
|---|---|
| Officer Ramirez: | Do you understand each of these rights? |
| Cox: | Yes. |

| | |
|---|---|
| Officer Kearns: | Do you wish to answer any questions at this time? |
| Cox: | Can I maybe make a phone call so I can talk to my lawyer? |
| Officer Ramirez: | Yeah, yeah, okay. All right, so, uh, quick question man. Uh, where'd, where'd you get the gun from? |
| Cox: | Where'd I get it from? |
| Officer Ramirez: | Where'd you get it from? |
| Cox: | I found it. |
| Officer Ramirez: | You found it? All right. Where'd you find it? |
| Cox: | On 56th and Justine. |
| Officer Ramirez: | 56th and Justine? Okay. And, uh, why do you carry the gun? |
| Cox: | Just for protection? |
| Officer Ramirez: | Just for protection? Okay, and uh, do you have a FOID card or CCL? |
| Cox: | [Shook head]. |

Thereafter, Officer Ramirez told Cox he would receive the phone call he requested, "as soon as possible."

**Legal Standard**

In a motion to suppress statements, the "burden is on the Government to show, as a 'prerequisit[e]' to the statement's admissibility as evidence… that the defendant 'voluntarily, knowingly, and intelligently waived his rights.'" *J.D.B. v. North Carolina*, 564 U.S. 261, 269–70, 131 S. Ct. 2394, 180 L. Ed. 2d 310 (2011) (quoting *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)). As to a motion to suppress evidence retrieved subsequent to a traffic stop, "[t]he government bears the burden of proving by a preponderance of the evidence that reasonable suspicion supported the traffic stop." *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020) (citing *United States v. Peters*, 743 F.3d 1113, 1116 (7th Cir. 2014)).

**Discussion**

Cox moves to suppress both the content of his statements and the evidence collected as a result of the traffic stop. The Court begins with the latter.

*Motion to Suppress Evidence*

In support of his motion, Cox argued at hearing and in briefing that the officers did not have reasonable suspicion to stop him.[1] Under the Fourth Amendment, officers may conduct a brief investigatory traffic stop if they have "'at least [an] articulable and reasonable suspicion' that the particular person stopped is breaking the law." *United States v. Rodriguez-Escalera*, 884 F.3d 661, 667–68 (7th Cir. 2018) (quoting *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)). Where an officer possesses probable cause to believe an individual committed a minor criminal offense, even a traffic offense, she may arrest the offender. *Ray v. City of Chicago*, 629 F.3d 660, 663 (7th Cir. 2011).

Here, Cox contends "the officers did not observe [him] commit any traffic violation prior to curbing the vehicle." In support, Cox argues that Officer Ramirez made contradictory statements that suggest he did not possess a lawful reason to stop Cox before turning around to pursue him. However, Cox did not call Officer Ramirez to testify at hearing or elicit any evidence of these contradictions. Regardless, the officers' intention for stopping Cox is not relevant to the Court's analysis. Whether Officers Kearns and Ramirez decided to pull over Cox before witnessing a traffic infraction is moot. As Officer Kearns testified and as evidenced by the dash camera footage, Cox did commit a traffic offense. He operated his vehicle in the bike lane without using a turn signal in order to pass a left-turning car on the righthand side in violation of Municipal Code of Chicago 9-

---

[1] At hearing, defense counsel requested additional briefing to summarize Cox's arguments as to his motion to suppress statements and make final argument based on the evidence presented at hearing in support of the motion to suppress evidence. As a result, neither side presented closing argument. Despite the Court's expectation of further argument, the parties subsequently rescinded their request to brief up the remaining issues. Therefore, the Court was left to rely only on the parties' prior briefing. (Dkts. 47, 57, 62, 66.)

40-060 and 625 ILCS 5/11-804(d). After witnessing these offenses, and not before, Officer Ramirez activated the squad car's lights and pulled the vehicle over. Cox makes no argument that the traffic stop began at any point prior. Therefore, the officers possessed a legal basis to stop Cox.

Cox's argument seems to suggest that the basis for the stop served as an impermissible pretext for the traffic stop or that stopping Cox for a bike lane infraction was unfair because Officer Ramirez executed the same maneuver minutes prior. That is, however, not the law. The reasonableness of a traffic stop is decided using an objective standard, not a subjective one. *See generally Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). And Cox is not immune from the consequences of his traffic infractions because another has committed the same infraction without consequence.

*Motion to Suppress Statements*

Next, Cox moves to suppress statements elicited after the traffic stop. The parties agreed not to proceed to an evidentiary hearing as to Cox's statements because there are no disputed issues of material fact. *United States v. Brown*, 483 F. App'x 289, 291 (7th Cir. 2012). Thus, the Court relies on the facts as represented by the parties in their briefing.

Cox first contends that his statement that he carried a gun for protection must be suppressed because it was involuntarily given in response to custodial interrogation prior to receiving his *Miranda* rights. The *Miranda* requirement is only triggered when a defendant is both in custody and subject to interrogation. *United States v. Jones*, 600 F.3d 847, 854 (7th Cir. 2010). Interrogation covers more than express questioning—rather, it includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). In addition, "if the defendant initiates further communications, the police are not prohibited from 'merely listening' to his voluntary statement."

5

*Jones*, 600 F.3d at 855 (quoting *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981)).

There is no dispute that Cox was in custody while in the police vehicle. The government instead maintains that Cox's statements were not a result of interrogation because Officer Kearns' question—"You know how much it is to get your car out for a gun?"—was not reasonably likely to prompt an incriminating response. The Court agrees. Further, Cox, not the officers, initiated the conversation by thanking the officers for not impounding the vehicle. That Officer Ramirez repeated his question three times does not change the analysis, contrary to Cox's argument. The undisputed record shows that Officer Ramirez repeated himself because Cox could not hear him, not that he badgered Cox into an incriminating response. Therefore, the Court denies the motion to suppress the statement "I keep a gun for protection 'cause you know people out here are crazy."

Cox's statements made at the police station present a different issue. Though the officers had at that point *Mirandized* him, Cox contends they continued questioning him after he invoked his right to counsel. Officers may question a suspect who explicitly or implicitly waives his right to counsel after receiving his *Miranda* warnings. *United States v. Thurman*, 889 F.3d 356, 364 (7th Cir. 2018). An affirmative invocation requires a clear and unambiguous assertion of the right to counsel. *Id.* Where a suspect's assertion is ambiguous, officers are not obligated to cease questioning to clarify the statement. *United States v. Shabaz*, 579 F.3d 815, 818 (7th Cir. 2009).

The government argues that Cox failed to make an unambiguous request for counsel because of his use of the word "maybe." *See United States v. Hunter*, 708 F.3d 938, 944 (7th Cir. 2013) (comparing decisive invocations with ambiguous invocations using words like "maybe" and "should"). His statement "can I maybe make a phone call," the Government contends, would not make a reasonable officer understand that he sought to invoke his right to counsel. The government's laser focus on the word "maybe" disregards the context and structure of the sentence.

6

Though "maybe" often signals indecision or uncertainty, here, a reasonable person would understand the word as one of polite request. *See Maybe*, Collins English Dictionary, *available at* https://www.collinsdictionary.com/us/dictionary/english/maybe (last visited Aug. 3, 2022) ("Maybe is also used to introduce polite requests."). Here, Cox's use of "maybe" most reasonably reads as an introduction to his request to make a phone call. A reasonable officer would interpret the direct statement that followed, "so I can talk to my lawyer," as a clear request to speak to his attorney, unmodified by his prior use of "maybe." *See United States v. Wysinger*, 683 F.3d 784, 790–91 (7th Cir. 2012) (holding defendant's statement "I mean, but can I call [a lawyer] now" an unambiguous invocation). The preceding question ("Do you wish to answer any questions at this time?") further bolsters this interpretation. Additionally, after peppering him with more questions about the gun, Officer Ramirez told Cox he could make the phone call as soon as possible, indicating that Officer Ramirez subjectively understood Cox's invocation.

Because Cox clearly invoked his right to counsel, the officers should have immediately concluded questioning him. Instead, Officer Ramirez asked Cox questions that elicited incriminating responses. As a result, the Court grants Cox's motion to suppress the statements elicited after his invocation of his right to counsel.

**Conclusion**

For the reasons stated above, defendant's motion [47] to suppress evidence is denied and his motion to suppress statements is granted in part and denied in part.

**IT IS SO ORDERED.**

Date: 8/4/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

7